IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VELOCITY PRESS, INC., a Utah corporation,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br><br>KEY BANK, N.A.; Q.A.M., INC., a Virginia corporation dba SANDEN USA, INC.; Q.A.M. INTERNATIONAL, a Nevada corporation; ROBERT PITEL, an individual; DOUGLAS JUSTUS, an individual; DOE DEFENDANTS I through X;<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br><br><br>Case No. 2:09-CV-520 TS |

The Court has before it Defendant KeyBank, NA's ("KeyBank") Motion for Summary

Judgment,[1] Defendants Douglas Justus ("Justus") and Q.A.M. International's ("International")

Motion for Summary Judgment,[2] KeyBank's Motion to Strike Paragraphs 22-26 & 28 of the

Declaration of Drew Elkins,[3] and Plaintiff Velocity Press, Inc.'s ("Velocity") Motion to Strike

---

[1]Docket No. 52.

[2]Docket No. 56.

[3]Docket No. 79.

Defendant Robert Pitel's Memorandum in Reply to Plaintiff's Opposition to Defendant Douglas Justus and Q.A.M. International's Motion for Summary Judgment.[4]

A hearing was held on this matter on December 16, 2010. Having reviewed the parties' respective arguments, the Court enters the following order.

## I. BACKGROUND

Plaintiff Velocity is a commercial printer specializing in web printing since January 2004. In 2006, Velocity began negotiating with Sanden Machine Limited ("Sanden") to purchase a press directly from Sanden.

Prior to these negotiations, Velocity had a standing relationship with an entity known as Sanden USA, a dba of Q.A.M., Inc. at the time and more recently a dba of Q.A.M. International. Velocity's main contacts at Sanden USA were Douglas Justus and Robert Pitel. Velocity and Sanden USA agreed to allow Sanden USA to use Velocity's facilities and employees in Salt Lake City, Utah to market presses manufactured by Sanden in exchange for a parts credit with Sanden. During Velocity and Sanden's negotiations for the new printing press, Velocity discussed its purchase with its main contacts at Sanden USA. Velocity alleges that sometime during the course of its relationship with Sanden USA, agents of Sanden USA represented that Sanden was financially stable.

On or about October 30, 2006, Velocity entered into a contract with Sanden under which Sanden agreed to sell a printing press to Velocity in exchange for payment of the purchase price. The contract between Sanden and Velocity provided the following payment terms: "30%

_____

[4]Docket No. 76.

Downpayment with signed order. 30% Due and payable halfway through manufacturing. 35% Due and payable after notification that equipment is complete and operating on Sanden's floor. 5% Due and payable upon completion of installation."[5] Velocity also executed an addendum to the contract between Velocity and Sanden which provided that the contract was contingent upon Velocity finding acceptable third-party financing by December 1, 2006.[6]

Shortly after Velocity and Sanden contracted for the new printing press, Velocity began discussing financing for the press with People's Bank.[7] In spring of 2007, however, Velocity was solicited by representatives from Defendant KeyBank and the parties began discussing financing for the press. In May 2007, Velocity and KeyBank entered into a loan agreement and an equipment lease which are not at issue here.

In late May 2007, while Velocity and KeyBank were negotiating the financing of the press, Sanden sent Velocity an invoice requesting a 30% down payment of $484,168.70 for the printing press. It is undisputed that this invoice was the only invoice Sanden sent to Velocity in connection with the purchase of the printing press, although why this invoice was the only one sent is in dispute.

Around this same time period, KeyBank's underwriting department decided to pursue additional security on the loan for the printing press. The parties dispute whether this additional security was necessary or contemplated by the parties' agreement, but the fact that KeyBank

---

[5]Docket No. 53, at Ex. D (Depo. Ex. 70).

[6]*Id.* (Depo. Ex. 71).

[7]Docket No. 73, at viii.

pursued an additional security interest is undisputed. KeyBank negotiated directly with Sanden a Security Agreement, which was entered into on June 8, 2007. This Security Agreement granted KeyBank a security interest in certain collateral of Sanden's to the extent of $250,000. KeyBank also attempted to negotiate a letter of credit with Sanden's bank in Canada, which would be issued to Sanden with Velocity as a beneficiary. The parties dispute whether KeyBank informed Velocity that additional security was necessary to close the loan agreement.

On June 8, 2007, Velocity and KeyBank entered into a loan agreement (the "June Loan"). The June Loan consisted of a Promissory Note, Commercial Security Agreement, Agreement to Provide Insurance, Corporate Resolution to Borrow/Grant Collateral, Disbursement Request and Authorization, and Notice of Final Agreement.[8] Under the June Loan, Velocity agreed to repay to KeyBank any money disbursed on its behalf, up to the principal amount of $1,728,000.00. The June 8, 2007 Promissory Note included the following term:

> LINE OF CREDIT. This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. . . .The following persons currently are authorized to request advances and authorize payments under the line of credit . . .: Drew Elkins, President, and Christy Elkins, Executive Vice President of Velocity Press, Inc. . . . Lender will have no obligation to advance funds under this Note if: . . . (E) Lender in good faith believes itself insecure.[9]

The June Disbursement Request and Authorization recognizes that the specific purpose of the loan is for "printing press construction."[10] This Disbursement Request and Authorization

---

[8]Docket No. 53, at Ex. A.

[9]*Id.*

[10]*Id.*

further stated that "Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied."[11]

KeyBank made the first disbursement of funds on or about the same time the June Loan was executed.

After the June Loan was executed by the parties, KeyBank learned that Sanden would not be issuing a letter of credit and, thereafter, decided that KeyBank would issue a letter of credit on Velocity's behalf in favor of Sanden "for an amount equal to what would have been required under the second draw" under the Sanden-Velocity contract.[12]  The letter of credit, however, would not be available to draw upon until the completed printing press reached Velocity's place of business and was accepted by Velocity.

The parties dispute whether KeyBank's pursuit of this letter of credit was contemplated by the June Loan.  The parties further dispute the significance of KeyBank's actions in pursuing this letter of credit.  KeyBank presents their actions as a renegotiation of the June Loan.  Velocity argues that KeyBank's actions were in contravention to and a repudiation of the June Loan.

On July 27, 2007, Velocity executed an Application for a Letter of Credit to be issued in the amount of $529,168.70 with Sanden as beneficiary.  That same day, Velocity executed a Letter of Credit Reimbursement and Security Agreement.  In the parties' briefing, the parties disputed which draft of the Letter of Credit was reviewed by Velocity.  At oral argument, Velocity presented to the Court a recently discovered email which was sent to Velocity by

---

[11]*Id.*

[12]*Id.*, Ex. F (Depo. Ex. 67).

KeyBank containing a draft of the Letter of Credit Velocity as an attachment. It is undisputed that, after Velocity received this draft, an agent of Velocity wrote to KeyBank that "[t]he wording is alright as you have explained it to me."[13]

On August 9, 2007, Velocity entered into a loan agreement for $1,728,000.00 (the "August Loan"). Like the June Loan, the August Loan included a Promissory Note, a Commercial Security Agreement, a Disbursement Request and Authorization, an Agreement to Provide Insurance, a Corporate Resolution to Borrow/Grant Collateral, and a Notice of Final Agreement. The Promissory Note states that "[t]his Note is a Renewal of a Promissory Note dated June 8, 2007, in the original principal amount of $1,728,000.00."[14] The Letter of Credit was incorporated into the August Promissory Note as an Exhibit. The August Loan explains that "[a]n exhibit, titled Letter of Credit Exhibit, is attached to this Note and by this reference is made a part of this Note just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Note."[15] The Letter of Credit Exhibit provides that Velocity may request from KeyBank the issuance of letters of credit under the Note.[16] The Letter of Credit Exhibit was signed by both Drew Elkins and Christy Elkins on behalf of Velocity.[17]

---

[13] *Id.* ¶¶ 57-58.

[14] *Id.* at Ex. B.

[15] *Id.*

[16] *Id.*

[17] *Id.*

KeyBank issued the Letter of Credit on or about August 17, 2007. The Letter of Credit provided that Sanden may draw on the Letter of Credit upon presentment of a statement certifying that invoices for the completed press had been submitted to Velocity, the original Letter of Credit, and a Certificate of Acceptance executed by Velocity.[18] Velocity disputes that it ever agreed to an alteration of the original periodic payment requirements or that it was ever informed of such an alteration.

Both the Letter of Credit issued by KeyBank and the August Loan had a maturity date of December 1, 2007. Because Sanden had not completed the manufacture of the printing press, both these maturity dates were extended several times, the latest of which extended the maturity date to October 1, 2008.[19]

When Velocity executed the second extension of the maturity date, the Disbursement Request and Authorization misstated that $1,037,772.28 had been disbursed as of April 28, 2008.[20] In fact, only the first disbursement of $459,168.70 had been made.[21] The error was a result of accounting the $539,168.70 committed under the Letter of Credit as actually disbursed, although the Letter of Credit had never been paid or presented for payment.[22]

---

[18]*Id.* at Ex. C.

[19]*Id.* at Ex. D (Depo. Ex. 80).

[20]*Id.* ¶ 90.

[21]*Id.*

[22]*Id.* ¶¶ 93-94.

Sanden declared bankruptcy in September 2008. Around that same time, Velocity learned that Sanden would not be delivering the printing press. When Sanden filed for bankruptcy, Velocity filed a claim with the bankruptcy trustee for $546,667.00. The bankruptcy trustee denied all but $80,000 of Velocity's claim. KeyBank decided not to pursue the security interest it was granted under the Security Agreement with Sanden because the legal fees would exceed what KeyBank could realize under the bankruptcy. Upon informing Velocity that KeyBank was not interested in pursuing its security interest, Velocity asked KeyBank to assign its security interest to Velocity. KeyBank offered to do so under a "Note Sale and Assignment Agreement," which included a waiver by Velocity of all of its claims against KeyBank for any breaches of its agreement. Velocity declined to enter into the agreement.

Velocity and KeyBank entered into a new loan agreement on October 7, 2008 (the "October 2008 Loan").[23] The purpose of this loan was to refinance Velocity's obligation to pay the amount distributed to Sanden under the first disbursement. The October 2008 Loan, like the earlier loan agreements, contained a Commercial Security Agreement which granted KeyBank a security interest in certain collateral of Velocity's. Velocity paid the October 2008 loan in full to KeyBank on February 4, 2009. KeyBank released all security interest except a UCC filing. The parties dispute whether KeyBank released this filing statement immediately once informed of the error or only after repeated requests.

Also during this litigation, Velocity has alleged that KeyBank owed Velocity a refund of $7,499.99 in improper fees. KeyBank alleges that it does not dispute this amount and refunded

---

[23]*Id.* at Ex. D (Depo. Ex. 83).

the amount on July 29, 2010.  Velocity claims that this was only after repeated requests and is also inadequate because KeyBank has not tendered any interest or attorney's fees.

Velocity filed suit on June 6, 2009.  Velocity subsequently filed its first amended complaint on February 24, 2010, against KeyBank; Q.A.M., Inc., dba Sanden USA, Inc.; Q.A.M. International, Robert Pitel, and Douglas Justus.  Velocity alleges the following claims: (1) against Q.A.M. International and Sanden USA, Velocity alleges claims for breach of contract and fraudulent inducement; (2) against Q.A.M International, Sanden USA, Mr. Pitel, and Mr. Justus, Velocity alleges claims for alter ego or pierce the corporate veil; (3) against KeyBank, Velocity alleges breach of fiduciary duty, unjust enrichment, breach of contract and breach of the covenant of good faith and fair dealing; and (4) against all defendants, Velocity alleges a claim for punitive damages.

On July 30, 2010, KeyBank moved for summary judgment in its favor on all of Velocity's claims asserted against it.  On August 2, 2010, Defendants Q.A.M. International ("International") and Douglas Justus ("Justus") moved for summary judgment in its favor an all of Velocity's claims asserted against them.

## II.  DISCUSSION

A.      SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[24]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[24]*See* Fed.R.Civ.P. 56(a).

a verdict for the nonmoving party in the face of all the evidence presented.[25]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[26]  In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment." Instead, the non-moving party must provide sufficient evidence "such that a reasonable jury could return a verdict for the non-moving party."[27]

B.    KEYBANK'S MOTION FOR SUMMARY JUDGMENT

KeyBank moves this Court for summary judgment in its favor on all claims asserted against it by Velocity.  First, KeyBank argues that Velocity cannot demonstrate that KeyBank breached any provision of the June Loan.  Second, KeyBank argues that Velocity cannot prevail on its breach of covenant of good faith and fair dealing claim because the covenant does not impose obligations beyond what is required under the parties' contract.  Third, KeyBank argues that Velocity cannot prevail on its breach of fiduciary duty claims because KeyBank was not in a fiduciary relationship with Velocity.  Fourth, KeyBank argues that Velocity cannot prove that its damages were caused by KeyBank.  Fifth, KeyBank argues that Velocity cannot show an entitlement to punitive damages.  Finally, KeyBank argues that Velocity's unjust enrichment

---

[25]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[26]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[27]*Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

claim fails as a matter of law because the parties had an enforceable contract. This memorandum will address each of these arguments in turn.

1.      *Breach of Contract*

KeyBank asserts that it is entitled to judgment as a matter of law on Velocity's breach of contract claim. As a threshold matter, KeyBank argues that Velocity's breach of contract claim is limited to the June Loan. In reviewing the parties' subsequent loan agreements, however, KeyBank's reading appears to be overly narrow. As the August Loan makes clear, that "Note is a Renewal of a Promissory Note dated June 8, 2007, in the original principal amount of $1,728,000.00."[28] Moreover, as KeyBank acknowledges in its memorandum in support, the June and August Loans were integrated.[29] Therefore, the Court will consider Plaintiff's breach of contract claims under the June Loan and August Loan agreements.

i.      *The June Loan*

KeyBank argues that Velocity cannot prevail on its breach of contract claim of the June Loan because Velocity has not identified an express term of the contract which was breached by KeyBank. In response, Velocity argues that KeyBank's assertions overlook its claim for breach by repudiation. Velocity argues that once KeyBank required additional security beyond what was contemplated by the June Loan, KeyBank's actions constituted a repudiation of the contract and thereby put KeyBank in breach of the June Loan agreement.

---

[28]*Id.* at Ex. B.

[29]Docket No. 53, at 30-31.

As Utah case law makes clear,

> "[T]o constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not . . . perform. . . . However, language that under a fair reading 'amounts to a statement of intention not to perform except on conditions which go beyond the contract ' constitutes a repudiation." Moreover, "where a party wrongfully states that he will not perform at all unless the other party consents to a modification of . . . [the contract], the statement is a repudiation . . . because the breach that he threatens . . is a complete refusal of performance."[30]

KeyBank argues that Velocity's breach by repudiation claim fails as a matter of law because it was never pled. KeyBank's case law in support of this assertion, however, is largely unhelpful.[31] While these cases uphold the long-held rule that a judgment must match the pleadings, the cases do not clarify whether a general claim for breach of contract is adequate to plead a claim for breach by repudiation. In reviewing the Restatement (Second) of Contracts, the Court notes that the Restatement defines a repudiation as a statement or action which gives the obligee of the contract a claim for damages for total breach under § 243—the section which sets forth the standard for a general claim for breach of contract.[32] As the Restatement defines a repudiation by reference to a claim for breach of contract, it appears appropriate to allow a claim for repudiation to proceed under a general allegation of breach of contract. Therefore, the Court will review the claim on its merits.

---

[30]*Scott v. Majors*, 980 P.2d 214, 218 (Utah 1999) (quoting Restatement (Second) of Contracts § 250 cmts. b & d (1981)) (alterations in original).

[31]*See Griffin Dewatering Corp. v. N. Ins. Co. of New York*, 176 Cal. App. 4th 172, 210 (Cal. Ct. App. 2010); *Colvin v. Rickert*, 2006 WL 285993, at *8 (Tex. App. Feb. 8, 2006).

[32]Restatement (Second) of Contracts § 250(a).

In reviewing the record, the Court finds that there is adequate evidence upon which a reasonable fact finder could find a breach of contract by repudiation. KeyBank and Velocity entered into the June Loan under the impression that KeyBank was sufficiently secure to carry out the transaction. Before tendering performance, however, there is evidence to support the contention that KeyBank demanded additional security from Sanden and Velocity and required Velocity and Sanden to alter its prior-arranged payment structure. Because Velocity has demonstrated sufficient evidence upon which a reasonable jury could conclude that KeyBank breached its agreement by repudiation, the Court finds that KeyBank is not entitled to judgment as a matter of law. Therefore, the Court will deny KeyBank's Motion for Summary Judgment as to Velocity's breach of the June Loan.

The Court notes that KeyBank in reply argues that Velocity waived any claim or is estopped from raising any claim of breach by repudiation by signing the August Loan. While these arguments are well-taken, disputed issues of material fact preclude summary judgment on this issue. Therefore, these defenses are an appropriate question for the jury.

   *ii.*  *The August Loan*

KeyBank argues that Velocity cannot prevail on its breach of the express terms of the August Loan because Velocity never requested later distributions as required by the Letter of Credit Exhibit. It is undisputed that Velocity signed the Letter of Credit Application. However, the draft of the Letter of Credit which was presented to the Court at oral argument contains language which contradicts the Letter of Credit Application. The Court finds that this factual

dispute makes summary judgment inappropriate. Therefore, the Court will deny summary judgment on Velocity's breach of the August Loan.

### iii. Collection of Improper Fees

KeyBank argues that it is entitled to summary judgment on Velocity's claim that KeyBank had a contractual duty to refund the fees that Velocity paid because the terms of the written agreements do not support Velocity's claim. KeyBank argues that the plain language of the loan agreements, which was agreed to by Velocity, calls for the payment of fees. In response, Velocity argues that once Velocity signed documents and paid fees earmarked for a specific purpose, these documents also became enforceable contracts. The parties appear to dispute whether these fees were used as contemplated by the parties' agreements. Because this dispute is material to whether KeyBank performed its obligations under the agreements, the Court finds summary judgment inappropriate. Therefore, the Court will deny the motion as to this claim.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

KeyBank moves the Court to dismiss Velocity's claim for breach of the implied covenant of good faith and fair dealing because the claim fails as a matter of law. As a general rule, "every contract is subject to an implied covenant of good faith."[33] "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract."[34]

---

[33]*Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55 (Utah 1991).

[34]*St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199-200 (Utah 1991).

Velocity argues that KeyBank did not act in good faith by refusing to finance the transaction consistent with the purpose of purchasing a printing press, refusing to transfer its security interest to Velocity, requiring Velocity to pay fees when new loan documents where executed, delaying the release of its security interest in Velocity's property, and misrepresenting that two distributions have been made. The Court will address each of these in turn.

i.     *The Common Purpose*

KeyBank's argument for dismissal of Velocity's claim that KeyBank did not act in good faith by refusing to act consistent with the common purpose of the loan agreements focuses largely on the express terms of the contract to argue that, because no express term directly deals with any of Velocity's claims, Velocity's claims fail as a matter of law. In response, Velocity argues that KeyBank breached the covenant by acting in contravention to the agreed upon common purpose of the June Loan Agreement to finance the purchase of a printing press pursuant to Velocity and Sanden's Agreement.

In reviewing the record, the Court finds that a reasonable jury could conclude that KeyBank's demand that Velocity or Sanden provide additional security after the June Loan was executed destroyed or injured Velocity's right to receive the fruits of the contract. Therefore, dismissal on summary judgment is inappropriate and the Court will allow the claim to proceed.

ii.     *Transfer of Security Interest*

KeyBank further argues that Velocity's claim that KeyBank did not act in good faith by refusing to assign its security interest with Sanden should be dismissed on summary judgment. In response, Velocity brings to the Court's attention representations by KeyBank to both Velocity

and Sanden that Keybank was representing Velocity in pursuing the security interest with Sanden. The Court finds that on this evidence, a reasonable jury could conclude that KeyBank failed to act in good faith when it refused to assign its security interest to Velocity unless Velocity waived any right to later sue KeyBank. Therefore, summary judgment is inappropriate on this claim and the Court will allow the claim to proceed.

### iii. *Payment of Fees*

KeyBank argues that it is entitled to summary judgment on Velocity's claim that KeyBank breached the implied covenant of good faith and fair dealing by failing to return fees collected for a specific purpose. KeyBank argues that all fees were paid pursuant to the loan agreements and therefore agreed to by Velocity. KeyBank's argument, however, does not fully address Velocity's claim. Velocity's claim is not just that KeyBank collected fees, but that KeyBank failed to return the fees after not using the fees towards the agreed upon common purpose. KeyBank has therefore failed to carry its burden to demonstrate that it is entitled to judgment as a matter of law. Therefore, the Court will deny KeyBank's motion as to this claim.

### iv. *Release of the Security Interest and Misstatement in Disbursement Agreement*

KeyBank argues that Velocity's claim that KeyBank's failure to release the security interest on Velocity's property and KeyBank's misstatement in the disbursement agreement breached the implied covenant of good faith and fair dealing fails as a matter of law. KeyBank argues that Velocity was not damaged by these oversights. Reviewing the record in the light most favorable to the non-moving party, the record contains sufficient evidence that a reasonable

jury could conclude that Velocity was damaged by these oversights. Therefore, the Court finds summary judgment inappropriate and will allow the claim to proceed.

3.      *Breach of Fiduciary Duty*

KeyBank moves the Court for summary judgment on Velocity's breach of fiduciary duty claim because the parties were not in a fiduciary relationship. As a general rule, "no fiduciary relationship exists between a bank and its customer."[35] However, this general rule does not settle the matter. As Utah courts have repeatedly held, "whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case."[36] As this Court has noted previously,

> A fiduciary duty can be created when the lender goes beyond simply providing money to the borrower and offers advice and consultation, when the lender is involved in the borrower's business, if the borrower lacks sophistication, or if the borrower is involved in a business with a special nature.[37]

The parties heavily dispute whether the KeyBank went beyond providing money to offer advice and consultation. KeyBank asserts that its advice was simply aimed at lending money, while Velocity argues that the parties conduct demonstrate a relationship that exceeded that of a traditional lender. These contentions create an issue of material fact that precludes summary judgment. Therefore, the Court will deny the Motion as to this claim.

---

[35]*UBS Bank USA v. Ibby, LLC*, 2009 WL 4884383, at *6 (D. Utah Dec. 10, 2009).

[36]*First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1332 (Utah 1990).

[37]*UBS Bank USA*, 2009 WL 4884383, *6.

17

*4.     Causation*

KeyBank argues that it is entitled to summary judgment because Velocity cannot meet its burden to prove that its damages were caused by KeyBank's actions. A review of the record shows that this argument fails. For example, Mr. James Watts testified that during the time Velocity and KeyBank were negotiating additional security, Sanden was able to complete two similar printing presses prior to declaring bankruptcy. This testimony alone creates a sufficient issue of fact to preclude summary judgment. Therefore, KeyBank's Motion will be denied as to this ground.

*5.     Punitive Damages*

KeyBank further argues that it is entitled to summary judgment on Velocity's claim for punitive damages because Utah law does not recognize a separate cause of action for punitive damages and Velocity cannot prove that KeyBank acted willfully or maliciously.

The Court finds that Velocity's claim for punitive damages was "inappropriately pleaded as an independent cause of action."[38] Under Utah law, no separate cause of action for punitive damages exists.[39] Therefore, the Court will dismiss Velocity's claim for punitive damages as separately pleaded cause of action.

In so doing, the Court notes that it will allow Velocity to continue to pursue punitive damages if it can prevail on one of its claims which support entry of punitive damages. In other words, the Court will allow Velocity to pursue punitive damages as a *remedy*, not as a separate

---

[38]*Norman v. Arnold*, 57 P.3d 997, 1006 (Utah 2002)

[39]*Id.*

cause of action.  Thus, the Court's ruling on this issue is largely one of form, rather than substance.

6.  *Unjust Enrichment*

KeyBank lastly moves the Court to dismiss Velocity's unjust enrichment claim because the relationship between Velocity and KeyBank is governed by contract.  The doctrine of unjust enrichment "is designed to provide an equitable remedy where one does not exist at law.  In other words, if a legal remedy is available, such as a breach of an express contract, the law will not imply the equitable remedy of unjust enrichment."[40]  In its reply, KeyBank brings to the Court's attention the recent Utah Supreme Court case of *Ashby v. Ashby*.[41]  In *Ashby*, the Utah Supreme Court stated that

> [a] claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue. If there were a contract, it, rather than the law of restitution, would govern the parties' rights and determine their recovery.[42]

Velocity offers no authority which contradicts this clear language.  The parties do not dispute that the parties have a valid, enforceable contract.  Because the parties have an enforceable contract concerning the conduct at issue, the Court will grant the motion as to Velocity's claim for unjust enrichment.

---

[40]*Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996) (abrogated on other grounds); *see also Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.").

[41]227 P.3d 246 (Utah 2010).

[42]*Id.* at 250-51.

C.    Q.A.M. INTERNATIONAL AND JUSTUS'S MOTION FOR SUMMARY JUDGMENT

Defendants International and Justus move the Court for summary judgment in their favor on all of Velocity's claims against them. Velocity alleges four claims against International and Justus: breach of contract, alter ego / pierce the corporate veil, fraudulent inducement, and punitive damages.

1.    *Breach of Contract*

Justus and International move the Court to dismiss Velocity's breach of contract claims. The claims for relief against Justus and International for breach of contract concern an oral agreement entered into between Velocity and an entity known to Velocity as Sanden USA, a dba of Q.A.M., Inc. at the time of the contract.  This agreement allowed Sanden USA to bring customers interested in purchasing a printing press manufactured by Sanden Machine Ltd. to Velocity's facility in Salt Lake City, Utah.  In return, Velocity was to receive a parts credit with Sanden Machine Ltd. of at least $1,400.00 for each demonstration.

In Utah, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[43]  Defendants argue that Velocity has failed to bring forth sufficient evidence to support a breach of contract claim against International or Justus in his individual capacity. Specifically, Defendants argue that Velocity has failed to demonstrate that it had an enforceable agreement with International or Justus.

---

[43]*Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001).

Although it is true that Velocity has not alleged a contract with Justus or International, Velocity's claims against these defendants are inextricably linked to its alter ego / pierce the corporate veil claim. Velocity argues that although Justus or International were not the contracting entities, their interconnectedness to Q.A.M., Inc. and/or Sanden USA make them liable for its contracts. Thus, this claim cannot be viewed in isolation, and dismissal of the breach of contract claims will only be appropriate if summary judgment is granted on Velocity's alter ego / pierce the corporate veil claim. The Court will thus turn its attention to Velocity's alter ego / pierce the corporate veil claim.

### 2.    *Alter Ego / Pierce the Corporate Veil*

Velocity's claim for alter ego / pierce the corporate veil asserts that International and Justus should be held individually liable for the alleged oral agreement or fraudulent misrepresentations because Justus, International, and others failed to observe the separateness of the corporate form and to hold otherwise would work an injustice upon Velocity.

Significant factual disputes preclude summary judgment on Velocity's alter ego / pierce the corporate veil claims. Each of these claims hinge on International and Justus's relationship to one another and related persons/entities such as Robert Pitel and Q.A.M., Inc. As Defendants note in their reply, "[t]he propriety of piercing the corporate veil is highly dependent of the equities of the situation, and the inquiry tends to be highly fact-driven. The determination of whether or not a corporation is a mere instrumentality of an individual or another corporation is ordinarily a question of fact."[44]

---

[44]Docket No. 74, at 9 (quoting 1 FLETCHER CYC. CORP. § 41.10).

The factual record is insufficient at this time to appropriately analyze these claims and the Court finds summary judgment inappropriate. Therefore, the Court will deny summary judgment as to Velocity's breach of contract and alter ego / pierce the corporate veil claim.

### 3. Fraudulent Inducement

Justus and International move the Court to dismiss Velocity's claim for fraudulent inducement. Velocity's claim for fraudulent inducement concerns alleged representations by Justus, Robert Pitel, International, and Q.A.M., Inc. that Sanden Machine Ltd. was financially sound at the time Velocity entered into the contract for the printing press. Justus and International argue that Velocity's claims fail to meet the heightened pleading standards of Fed.R.Civ.P. 9(b) and that the claims fail as a matter of law because Velocity did not reasonably rely upon the alleged statements.

To appropriately plead a claim for fraudulent inducement, Velocity must plead the "'who, what, when, where and how' of the alleged fraud."[45] At oral argument, International and Justus argued that Velocity's failure to plead the timing of the alleged fraud with sufficient particularity hinders their ability to appropriately respond to this claim. The Court agrees that International and Justus's defense of this claim turns on when these alleged statements were made. In reviewing Velocity's Amended Complaint, the Court finds it difficult to determine the time-frame in which Velocity alleges the statements to have been made. Because of this inadequacy, the Court will grant International and Justus's motion and dismiss Velocity's fraudulent

---

[45] *US ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727-28 (10th Cir. 2006) (quoting *Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997)).

inducement claim. In so doing, the Court grants Velocity leave to amend its Complaint in order to cure its deficient fraudulent inducement claim.[46]

### 4. *Punitive Damages*

For similar reasons to KeyBank, Justus and International move the Court for summary judgment in its favor on Velocity's claim for punitive damages. As discussed above, the Court finds that Velocity's claim for punitive damages was inappropriately pleaded. As discussed previously, the Court will allow Velocity to pursue punitive damages as a *remedy*, not as a separate cause of action.

### D. MOTIONS TO STRIKE

At oral argument, the Court announced its decision to deny KeyBank's Motion to Strike and grant Velocity's Motion to Strike Robert Pitel's Reply Memorandum and stated it would explain its decision in its written order. The Court provides the following reasoning.

### 1. *KeyBank's Motion*

KeyBank's Motion moves the Court to strike certain paragraphs of Drew Elkins' declaration filed in opposition to KeyBank's motion for summary judgment because the statements were not based on personal knowledge, lack foundation, are speculative, and contain hearsay. The Court finds these motions to be moot because none of the identified statements are essential in deciding KeyBank's motion and the ideas expressed in the motion are contained elsewhere in the record. Therefore, the Court denies the motion to strike as moot.

---

[46]Because the Court grants Velocity leave to amend its Complaint so late in the proceedings, the Court limits its leave to amend to only the fraudulent inducement claim. Velocity may not alter or add any other remaining claims in its Complaint.

2.    *Velocity's Motion*

 Velocity's Motion moves the Court to strike Robert Pitel's Memorandum in Reply to Plaintiff's Opposition to Plaintiff's Opposition to Defendant Douglas Justus and Q.A.M. International's Motion for Summary Judgment because Robert Pitel is not a party moving for summary judgment and he is not entitled to file a reply memorandum.  In response, Robert Pitel argues that its reply is proper because Plaintiff and Defendants cite improper law, facts in Plaintiff's opposition concern him, and leave of the Court is proper.  Noticeably absent from Robert Pitel's response is any reference to a rule of procedure or case law which would support the leave he seeks.  Because Robert Pitel's reply memorandum is procedurally improper, the Court grants Velocity's motion to strike.

III.  CONCLUSION

It is therefore,

ORDERED that Defendant KeyBank's Motion for Summary Judgment (Docket No. 52) is DENIED IN PART and GRANTED IN PART.  It is further

ORDERED that Defendants Q.A.M. International and Douglas Justus's Motion for Summary Judgment (Docket No. 56) is DENIED IN PART and GRANTED IN PART.  It is further

ORDERED that KeyBank's Motion to Strike (Docket No. 79) is DENIED.  It is further

ORDERED that Plaintiff Velocity Press's Motion to Strike (Docket No. 76) is GRANTED.

Pursuant to this Court's standard procedure, the Court will refer this matter to settlement by separate order.

DATED   December 21, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge